# PRYOR & MANDELUP, L.L.P.
A Limited Liability Partnership Including Professional Corporations
675 Old Country Road
Westbury, New York 11590-4513

Telephone:  (516) 997-0999
Facsimile:  (516) 333-7333

Neil Ackerman, Esq.

Extension: __249__
E-Mail: na@pryormandelup.com

September 3, 2020

By Email:MCastro@coranober.com
Martha M. Castro
Paralegal
Coran Ober P.C.
25-02 Francis Lewis Boulevard
Flushing, NY 11358

Re:  In re Thomas Maffetone, EDNY Ch. 7 Case no. 19-72242-reg
Letter Agreement confirming the terms of the Trustee's extension from September 13, 2020, the current TIME OF THE ESSENCE date by which Joseph Pace, the high bidder at the Bankruptcy Court-approved auction sale of real property located at 913 Sound Shore Road, Jamesport, New York, must close on his purchase of this Property under Terms of Sale, incorporated into Memorandum of Sale, for 45 days to Wednesday, October 28, 2020, TIME BEING OF THE ESSENCE

Dear Martha:

This Letter Agreement will confirm the terms and conditions (the "Consent to Extension Terms") under which Robert L. Pryor, as Trustee (the "Trustee") of the bankruptcy Estate (the "Estate") of Thomas Maffetone the debtor in the Chapter 7 case no. 19-77242-reg which is pending before the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"), is agreeing to extend the TIME OF ESSENCE provision in the Terms of Sale of the real property located at 913 Sound Shore Road, Jamesport, New York a/k/a District: 0600; Section: 008.00; Block: 02.00; Lot: 008.000 (the "Property") signed by your client, Joseph Pace ("Mr. Pace"), before the auction sale of the Property and incorporated into the Memorandum of Sale signed by Mr. Pace as high bidder after the Auction Sale (copies of the Terms of Sale and Memorandum of Sale are attached for your ease of reference), from September 13, 2020 (the current TIME OF THE ESSENCE date for

closing under par. 5 of the Terms of Sale incorporated into the Memorandum of Sale (the "Current TOE Date") for 45 days, through and including Wednesday, October 28, 2020 (the "Extended TOE Date"):

1. This letter must be signed by Mr. Pace and your firm, as counsel to Mr. Pace, to confirm that the Consent to TOE Extension Terms set forth below are agreed to, in their entirety.

2. As a condition to the Trustee's agreement to the extension of the Current TOE Date to the Extended TOE Date, Mr. Pace must deliver, with the signed copy of this Letter Agreement that is returned to this office, as counsel to the Trustee, a bank check made payable to "Robert L. Pryor, as Trustee of Thomas Maffetone" in the sum of forty seven thousand five hundred dollars ($47,500.00), to be credited against the $475,000.00 purchase price, if Mr. Pace closes on his purchase of the Property on or before Wednesday, October 28, 2020, the Extended TOE Date. In the event the bank check that is delivered, does not clear as good funds in the separate Estate bank account that the Trustee is maintaining for this case, for any reason, we shall notify you that this has occurred; this Letter Agreement shall automatically be deemed to be void and of no force or effect; and the Terms of Sale and Memorandum of Sale signed by Mr. Pace shall govern Mr. Pace's, and the Trustee's and the Estate's, rights and the obligations in all respects.

3. TIME IS OF THE ESSENCE with respect to the extension to the Extended TOE Date, such that Mr. Pace must close on his purchase of the Property, otherwise in accordance with the Terms of Sale and the Memorandum of Sale, on or before Wednesday, October 28, 2020, the Extended TOE Date, TIME BEING OF THE ESSENCE.

4. There will be no further extension(s) granted by the Trustee to Mr. Pace.

5. If Mr. Pace does not close on his purchase of the property on or before the Extended TOE Date, Wednesday, October 28, 2020, then: (a) all monies remitted to the Trustee as of such Extended TOE Date (inclusive of the $47,500.00 already remitted by Mr. Pace to the Trustee, and the additional $47,500.00 that must be remitted to the Trustee with this fully signed Letter Agreement) (the "Payments") shall be deemed irrevocable forfeited by Mr. Pace as of October 29, 2020 to the Trustee and the Estate; (b) no portion of these Payments remitted to the Trustee by Mr. Pace shall be refundable to Mr. Pace under any circumstances; and (c) Mr. Pace shall not have or assert any claims of any kind or nature in the Bankruptcy Court or any other court or forum to or against all or any portion of the Payments; the Property; the Trustee; the Trustee's undersigned attorneys, the Trustee's auctioneer, or any other professionals retained by the Trustee in the case; the Estate, Michel Maffetone (the co-owner of the Property being sold); or any other persons or entities with respect to the Property, Mr. Pace's bid at the auction sale, for any other reason, under any circumstances.

6. Except as expressly set forth herein, all other terms and conditions of the Terms of Sale and the Memorandum of Sale shall remain in full force and effect, and are not modified or affect by this Letter Agreement.

Please return the fully signed letter with the $47,500.00 bank check required hereunder before the Current TOE Date. (Please note that the attorney from your Firm signing this Letter Agreement should write in his or her name below the signature line for said attorney.)

Cordially,

PRYOR & MANDELUP, L.L.P.
Attorneys for the Trustee

By: *Neil Ackerman*
       Neil Ackerman

THIS LETTER AGREEMENT IS
AGREED AND CONSENTED TO
IN ALL RESPECTS:

*Joseph Pace*
Joseph Pace

CORAN OBER P.C.
Attorneys for Joseph Pace

By: *[signature]*
      Simeon Soterakis

**CHASE**

**CASHIER'S CHECK**

8204   25-3/440

Date  09/08/2020   Void after 7 years

Remitter: JOSEPH PACE/ANNA PACE

Pay To The Order Of: ROBERT PRYOR AS CHAPTER 7 TRUSTEE

Pay: FORTY SEVEN THOUSAND FIVE HUNDRED DOLLARS AND 00 CENTS

$** 47,500.00 **

Drawen JPMORGAN CHASE BANK, N.A.

Reginald Chambers, Chief Administrative Officer
JPMorgan Chase Bank, N.A.
Columbus, OH

Memo:
Note: For information only. Comment has no effect on bank's payment.

"1433"

## TERMS AND CONDITIONS OF SALE

1. These Terms and Conditions of Sale are promulgated in connection with the public auction sale (the "Auction Sale") of certain real property located at 913 Sound Shore Road, Jamesport, New York a/k/a District: 0600; Section: 008.00; Block: 02.00; Lot: 008.000 (the "Property").

2. The Auction Sale will be held at Maltz Auction Gallery, 39 Windsor Place, Central Islip, NY 11722, on July 30, 2020. at 12:30 pm. (the "Sale Date"). Registration commences at 12:00 noon.

3. The Seller of the Property is Robert L. Pryor, Esq. (the "Trustee"), as the Chapter 7 Trustee of the bankruptcy estate (the "Estate") of Thomas Maffetone (the "Debtor"), a Chapter 7 case pending in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"), Case No. 19-72242-REG. The sale is conducted pursuant to Bankruptcy Code section 363(b) and (f).

4. In order to be permitted to bid on the Property, prior to the commencement of the Auction Sale, each prospective bidder must deliver to the Trustee a certified check or bank check in the amount of Thirty Thousand Dollars ($30,000.00) (the "Qualifying Deposit") payable to Robert L. Pryor, Esq. Chapter 7 Trustee, which amount shall serve as a partial good faith deposit against payment of the purchase price ("Purchase Price") by such competing bidder as the Trustee determines to have made the highest or best bid for the Property (the "Successful Bidder"). Within 48 hours after conclusion of the Auction Sale, the Successful Bidder shall deliver to the Trustee by certified check or bank check an amount equal to 10% of its successful bid minus the Qualifying Deposit (together with the Qualifying Deposit, the "Deposit"). The Successful Bidder must execute, and thereby agree to be bound by (i) these Terms and Conditions of Sale, and (ii) a Memorandum of Sale. At the conclusion of the Auction Sale, the Trustee or his representative will return the Qualifying Deposits to all other bidders.

5. The Successful Bidder must pay the balance of the Purchase Price for the Property (the difference between the amount of the successful bid and the Deposit) to the Trustee, by certified check, bank check, federal funds or wire transfer at the closing of title to the Property (the "Closing"). The Successful Bidder must close title to the Property at a date that is no more than forty five (45) days after the conclusion of the Auction Sale, **TIME BEING OF THE ESSENCE as to the purchaser**, although such date may be extended solely with the Trustee's express written consent. The Closing shall take place on a date to be determined by the Trustee (the "Closing Date") and will be held at the offices of the attorneys for the Trustee, Pryor & Mandelup LLP, 675 Old Country Road, Westbury, New York, 11590 ("P&M").

6. The Trustee, in his sole discretion, may seek from the Bankruptcy Court an Order confirming the results of the Auction Sale prior to closing, however such an Order is not required.

7. The Successful Bidder shall pay any Suffolk County, New York State, or other real property transfer taxes incurred by the transfer of the Property by the Estate at the Closing. Purchaser acknowledges that they will be responsible for the completion of any ACRIS form, if required. In connection with the Closing and Closing Date, the Successful Bidder is hereby given notice that <u>Time is of the Essence Against the Successful Bidder and the failure of the Successful Bidder to close for any reason whatsoever (except as otherwise provided below) including its failure to pay the balance of the Purchase Price on the Closing Date, will result in the Trustee retaining the deposit as liquidating damages and the termination of the Successful Bidder's right to acquire the Property under these Terms and Conditions of Sale</u>. The Successful Bidder shall be obligated to close title to the Property and there is no contingency of any kind or nature, including a mortgage contingency, permitting the Successful Bidder to cancel or avoid its obligation under these Terms of and Conditions of Sale other than the Trustee's inability to deliver insurable title to the Property. Further, the Successful Bidder shall have demonstrated, to the sole satisfaction of the Trustee or the Court, as the case may be, evidence of its ability to conclude the transaction upon these Terms and Conditions of Sale, without delay. The Trustee reserves the right to reject any offeror, who in the sole discretion of the Trustee, the Trustee believes is not financially capable of consummating the purchase of the Property. **Expenses incurred by the Successful Bidder, or any competing bidder concerning any due diligence, such as obtaining title reports or environmental inspections, shall be the sole responsibility of such bidder, and under no circumstances shall the Trustee or the Estate or the Trustee's professionals be responsible for, or pay, such expenses.**

8. In the event that the Successful Bidder for the Property fails to tender the payment of the balance of the Purchase Price on the Closing Date, or otherwise perform any of its obligations under these Terms and Conditions of Sale, the Trustee, at his sole option, shall be authorized to sell the Property to the Second Highest Bidder without any further notice without giving credit for the Deposit forfeited by the Successful Bidder, and upon such other terms and conditions as the Trustee deems appropriate. Should the Second Highest Bidder fail to close on the Property, within such time as the parties may agree but not to exceed thirty (30) days after notice from the Trustee to the Second Highest Bidder, the Trustee shall be authorized to sell the Property to the next highest or best bidder, without the necessity of any further notice or order of the Court. All bidders will be bound by these Terms and Conditions of Sale, including, without limitation, those terms set forth in paragraphs 5, 6, 7, 8, 9, and 10 hereof.

9. The Trustee or the Trustee's professionals have not made and do not make any representations as to the physical condition, rents, leases, expenses, operations, value of the land or buildings thereon, or any other matter or thing affecting or related to the Property or this Auction Sale, which might be pertinent to the purchase of the Property, including, without limitation, (i) the current or future real estate tax liability, assessment or valuation of the Property; (ii) the potential qualification of the Property for any and all benefits conferred by or available under federal, state or municipal laws, whether for subsidies, special real estate tax treatment, insurance, mortgages, or any other benefits, whether similar or dissimilar to those enumerated; (iii) the compliance or non-compliance of the Property, in its current or any future state, with applicable present or future zoning ordinances or other land use law or regulation, or the ability to obtain a change in the zoning or use, or a variance in respect to the Property; (iv) the availability of any financing for the purchase, alteration, rehabilitation or operation of the

Property from any source, including, but not limited to, any state, city or federal government or institutional lender; (v) the current or future use of the Property; (vi) the present and future condition and operating state of any and all machinery or equipment on the Property, if any, and the present or future structural and physical condition of any building thereon or its suitability for rehabilitation or renovation; (vii) the ownership or state of title of any personal property on the Property; (viii) the presence or absence of any laws, ordinances, rules or regulations issued by any governmental authority, agency or board and any violations thereof; (ix) any present or future issues concerning subdivision or non-subdivision of the Property; or (x) the compliance or non-compliance with environmental laws and the presence or absence of underground fuel storage tanks, any asbestos or other hazardous materials anywhere on the Property. Each bidder hereby expressly agrees and acknowledges that no such representations have been made. The Trustee is not liable or bound in any manner by expressed or implied warranties, guaranties, promises, statements, representations or information pertaining to the Property, made or furnished by the Trustee or any real estate broker, agent, employee, servant or other person or professional representing or purporting to represent the Trustee unless such warranties, guaranties, promises, statements, representations or information are expressly and specifically set forth in writing by the Trustee. **Property shall be delivered vacant at closing.**

10. The Property is being sold "**AS IS**" "**WHERE IS**", "**WITH ALL FAULTS**", without any representations, covenants, guaranties or warranties of any kind or nature whatsoever, and free and clear of any and all liens, judgments or mortgages, or adverse claims to title, of whatever kind or nature, such liens, if any, to attach to the proceeds of sale in such order and priority as they existed immediately prior to the Closing Date, and subject to, among other things (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof; (e) all leases and occupancies, if any, as may exist or encumber the Property or any portion(s) thereof; and (f) environmental conditions. By delivering their respective Qualifying Deposits, all bidders acknowledge that they have had the opportunity to review and inspect the Property, the state of title thereof and laws, rules and regulations applicable thereto, and the form of the Trustee's Deed that the Trustee will execute to convey the Property, and will rely solely thereon and on their own independent investigations and inspections of the Property in making their bids. Neither the Trustee nor any of his representatives make any representations or warrantees with respect to the permissible uses of the Property, including, but not limited to, the zoning of the Property. All bidders acknowledge that they have conducted their own due diligence in connection with the Property, and are not relying on any information provided by the Trustee, the Auctioneer for the Estate or the Trustee's professionals.

11. The Trustee shall convey the Property by delivery of a Trustee's Deed. The quality of title shall be that which a reputable title company is willing to approve and insure. The Trustee may at his option arrange for the issuance of a title insurance policy by such a company as he may choose at the sole cost and expense of the Successful Bidder.

12. The Successful Bidder has five (5) days from the conclusion of the Auction Sale to order title, copy of which shall promptly be provided to P&M (by electronic mail sent to rlp@pryormandelup.com and na@pryormandelup.com).

13. The Successful Bidder has twenty (20) days from the conclusion of the Auction Sale to advise P&M (by electronic mail sent to rlp@pryormandelup.com and na@pryormandelup.com) of any and all title issues or defects that would in any way be an impediment to the Closing on the sale of the Property. Failure of the Successful Purchaser to advise the attorneys for the trustee in writing, as set forth above, within such twenty (20) day period of any such title issues or defects shall be deemed a waiver of any and all rights to raise any such title issues or defects, with P&M reserving the right to specify a particular title company to insure title, provided said company is licensed in the State of New York.

14. Neither the Trustee, Trustee's counsel, the Auctioneer, nor the Estate is liable or responsible for the payment of fees of any broker. The only commissions that the Estate may be liable for are those of Maltz Auctions., Inc., which has been retained pursuant to an Order of the Bankruptcy Court, and those of the Trustee.

15. Nothing contained in these Terms and Conditions of Sale is intended to supersede or alter any provisions of Title 11 of the United States Code (the "Bankruptcy Code") or otherwise interfere with the jurisdiction of the Bankruptcy Court. All of the terms and conditions set forth in these Terms and Conditions of Sale are subject to modification as may be directed by the Trustee or by the Court. The Trustee reserves the right to modify these Terms and Conditions of Sale at the Auction Sale or thereafter to maintain consistency with the provisions of the Bankruptcy Code and/or prior orders of the Court.

16. These Terms and Conditions of Sale will be read into the record, or specifically incorporated by reference, at the Auction Sale of the Property. By making a bid for the Property, all bidders will be deemed to have acknowledged having read these Terms and Conditions of Sale and have agreed to be bound by them.

17. If the Trustee is unable to deliver title to the Property in accordance with these Terms and Conditions of Sale for any reason whatsoever, his only obligation will be to refund the Deposit, together with any interest earned thereon, if any, to the Successful Bidder, and upon such refund, the Successful Bidder will have no claim or recourse against the Trustee, the Trustee's professionals or the Auctioneer for the Estate.

18. The Trustee reserves his right to withdraw the Property from the Auction Sale, either prior, or subsequent to the Auction Sale, for any reason whatsoever, as he deems necessary or appropriate.

19. The Auction Sale of the Property is subject to confirmation by the Trustee.

20. The Bankruptcy Court shall determine any disputes concerning the Auction Sale of the Property. By participating in the Auction Sale, all bidders consent to the jurisdiction of the Bankruptcy Court to determine such disputes under

148127

2



the Debtor's pending case.

I have read these Terms and Conditions of Sale and agree to be bound by them.

By: ___Joseph Pace___                                    Date: 7/30/20



## Additional Deposit Required

**Total Deposit Required = 10% of High Bid at Auction**

High Bid at Auction: $ 475,000 —

10% of High Bid at Auction: $ 47,500 —

**Total Deposit Required:** = $ 47,500 —

Deposit Remitted: − $ 30,000 —

**Total Deposit Due w/in 48 hours:** $ 17,500 —

## MEMORANDUM OF SALE

The undersigned has this 30th day of July, 2020 agreed to purchase the real property located at 913 Sound Shore Road, Jamesport, New York a/k/a District: 0600; Section: 008.00; Block: 02.00; Lot: 008.000 (the "Property"), of Robert L. Pryor, Esq. as Chapter 7 Trustee for the Estate of Thomas Maffetone, Case number 19-72242-REG, and Michel Maffetone, for the sum of $ __475,000__ DOLLARS and hereby promise and agree to comply with the terms and conditions of the sale of said property, as set forth in the annexed Terms of Sale.

_____  
PURCHASER (Signature)

JOSEPH PACE  
PRINT NAME OF PURCHASER

31 CIRCLE DR  
ADDRESS

MANHASSET, NY 11030  
ADDRESS

_____-2107  
TELEPHONE NUMBER

___@gmail.com  
EMAIL

_____  
PURCHASER (Signature)

_____  
PRINT NAME OF PURCHASER

_____  
ADDRESS

_____  
ADDRESS

_____  
TELEPHONE NUMBER

_____  
EMAIL

Received from __JOSEPH PACE__ the sum of $30,000.00 DOLLARS, as a non-refundable deposit for the purchase of the Property pursuant to the Terms of Sale.

Robert L. Pryor, Esq., Chapter 7 Trustee  
Pryor & Mandelup LLP, Attorneys for the Chapter 7 Trustee  
675 Old Country Road  
Westbury, NY 11590  
(516) 997-0999

This is to verify that the successful bid in the above sale was for the sum of $ __475,000__.

_____  
RICHARD B. MALTZ, AUCTIONEER DCA # 1240836

### ATTORNEY INFORMATION

Name _____

Address _____

Phone _____

Email _____



**CHASE**

**CASHIER'S CHECK**

7239  25-3/440

Date  07/30/2020    Void after 7 years

**Remitter:** JOSEPH PACE

**Pay To The Order Of:** ROBERT PRYOR AS CHAPTER 7 TRUSTEE

**Pay:** THIRTY THOUSAND DOLLARS AND 00 CENTS

$** 30,000.00 **

Do not write outside this box

Memo:
Note: For information only. Comment has no effect on bank's payment.

Drawer: JPMORGAN CHASE BANK, N.A.

Reginald Chambers, Chief Administrative Officer
JPMorgan Chase Bank, N.A.
Columbus, OH

**CASHIER'S CHECK**

**CHASE**

Remitter: JOSEPH PACE/ANNA PACE

Pay To The Order Of: ROBERT L PRYOR, CHAPTER 7 TRUSTEE

Pay: SEVENTEEN THOUSAND FIVE HUNDRED DOLLARS AND 00 CENTS

Date 07/30/2020

$** 17,500.00 **

Drawer: JPMORGAN CHASE BANK, N.A.

Reginald Chambers, Chief Administrative Officer
JPMorgan Chase Bank, N.A.
Columbus, OH

Memo:
Note: For information only. Comment has no effect on bank's payment.

*check went to bank 7/31/20*